# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| JULIE BARRY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1825 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## Memorandum and Order

YOHN, J.                                                                July ___, 2007

Plaintiff Julie Barry, represented by attorneys and also certified law students from the

Penn Legal Assistance Office of the University of Pennsylvania Law School ("PLAO"),[1] filed the

instant motion, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, to

recover attorney fees and other costs for successfully challenging the decision of the

Commissioner of Social Security ("the Commissioner")[2] to deny plaintiff disability insurance

benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42

U.S.C. §§ 401-433.  The government has filed a response, and plaintiff's counsel has filed a reply

thereto.  For the reasons that follow, I will grant the motion.

---

[1]The law students were supervised by PLAO attorneys and certified to practice in the United States District Court for the Eastern District of Pennsylvania under this court's Student Practice Rule, E.D. Pa. R. 85.5.1, which requires three semesters of legal training and certification from the Dean of the law school.

[2]The named defendant in the instant suit was originally former Commissioner Jo Anne B. Barnhart; the current Commissioner, Michael J. Astrue, has been substituted pursuant to Federal Rule of Civil Procedure 25(d)(1).

**I. Factual & Procedural Background**[3]

Plaintiff applied for DIB and SSI on November 14, 2002.  After a hearing before an administrative law judge ("ALJ"), plaintiff's application was denied.[4]  On February 18, 2005, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  Thereafter, plaintiff–represented by attorneys and certified law students from the PLAO–sought judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  After plaintiff and the government filed cross-motions for summary

---

[3]This court's memorandum and order entered on September 29, 2006, *Barry v. Barnhart*, 2006 U.S. Dist. LEXIS 71918 (E.D. Pa. Sept. 29, 2006), provides a detailed account of the factual and procedural background of the instant case.

[4]When evaluating a claim for disability payments, the Commissioner applies a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000).  The Commissioner considers:  (1) whether the claimant worked during the alleged period of disability; (2) whether the claimant has a "severe medically determinable . . . impairment;" (3) whether the "impairment" meets the requirements of a listed impairment; (4) whether the claimant can continue to perform "past relevant work;" and (5) whether the claimant can perform "other work" in the national economy.  §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proving steps one through four.  If the claimant satisfies these requirements, the burden shifts to the Commissioner to show that the claimant is capable of performing "other work."  *Sykes*, 228 F.3d at 263.

Further, there is an additional process the Commissioner must employ to evaluate an alleged mental impairment.  *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999); §§ 404.1520a, 416.920a.  This technique requires the Commissioner to first consider the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a mental impairment.  §§ 404.1520a(b)(1), 416.920a(b)(1).  If the Commissioner finds an impairment, the Commissioner must then rate the degree of the functional limitation caused by the impairment in four areas:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  §§ 404.1520a(b)(2), 404.1520a(c)(3), 416.920a(b)(2), 416.920a(c)(3).  Based on this evaluation, the Commissioner must determine if the impairment is severe, §§ 404.1520a(d), 416.920a(d); if it is severe, the Commissioner must then determine whether it meets or equals a listing, §§ 404.1520a(d)(2), 416.920a(d)(2).  If the impairment does not meet or equal a listing, the Commissioner will then conduct a residual functional capacity assessment.  §§ 404.1520a(d)(3), 416.920a(d)(3).

judgment, I referred the case to a magistrate judge.

The magistrate judge issued a report and recommendation that plaintiff's motion be denied and the government's motion be granted.  Plaintiff filed two objections:  (1) the magistrate judge mistakenly approved the ALJ's decision to accord a doctor's opinion only partial weight; and (2) the magistrate judge erred in concluding that the ALJ's hypothetical question to the vocational expert ("VE") accurately conveyed her limitations.  In a memorandum and order entered on September 29, 2006, I overruled plaintiff's first objection; however, I sustained her second objection after finding that the ALJ's hypothetical question did not reflect all of plaintiff's established impairments.  *Barry v. Barnhart*, 2006 U.S. Dist. LEXIS 71918, at **18-34 (E.D. Pa. Sept. 29, 2006).  As a result, I remanded plaintiff's case to the ALJ for further consideration.

On December 21, 2006, plaintiff filed the instant motion for attorney fees and other costs under the EAJA.  Plaintiff claims that the government's position prior to and during the appeal was not substantially justified; therefore, because she received a favorable outcome and is a "prevailing party" under the EAJA, she is entitled to attorney fees.  Plaintiff's counsel seeks compensation in the amount of $6,572.50[5] for the work performed by himself and the certified law students, who were uncompensated, under his supervision.  Plaintiff's counsel asserts that he has spent twenty-six hours and thirty minutes representing plaintiff, which includes the time (two

---

[5]The motion for attorney fees calculates the hourly rates for plaintiff's counsel at $165.00 and for the certified law students at $75.00.  Plaintiff's counsel arrived at the $165.00 hourly rate for his fee by adjusting the $125.00 rate under the EAJA for the increase in the cost of living in 2006 as measured by the Consumer Price Index ("CPI").  (*See* Pl.'s Mot. for Att'y Fees ¶ 12.)  In the reply, plaintiff's counsel relies on the fee schedule established by Community Legal Services of Philadelphia in support of the $75.00 hourly rate requested for the work performed by the certified law students.  (*See* Reply Ex. A.)

hours) he spent preparing the reply related to the instant motion.  The $6,572.50 also takes into consideration the twenty-six hours expended by the certified law students who assisted counsel in representing plaintiff and in preparing the aforementioned reply.

In its response, the government contends that the motion should be denied because it was substantially justified in deciding to oppose plaintiff's request for remand.  In the alternative, the government asserts that the amount of time expended by plaintiff's counsel in the instant action was unreasonable.  In addition, the government argues that the $125.00 rate under the EAJA should be adjusted to compensate for the increase in the cost of living as measured by the Consumer Price Index ("CPI") for 2005, the year in which plaintiff's counsel performed the work.  Therefore, the government argues that the correct hourly rate for the services rendered by plaintiff's counsel is not $165.00 (the rate under the EAJA adjusted using the CPI for 2006), *see supra* note 5, but rather $157.00 (the rate under the EAJA adjusted using the CPI for 2005). Lastly, the government claims that the legal services rendered by the certified and uncompensated law students cannot form the basis for attorney fees under the EAJA.

## II.  Legal Standards

The Supreme Court has stated the general policy underlying the EAJA:

> Concerned that the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation, Congress enacted the EAJA, waiving the United States' sovereign and general statutory immunity to fee awards and creating a limited exception to the "American Rule" against awarding attorneys fees to prevailing parties.

*Pierce v. Underwood*, 487 U.S. 552, 575 (1988) (Brennan, J., concurring in part and in the

judgment); *see also Morgan v. Perry*, 142 F.3d 670, 683 (3d Cir. 1998).  In order to recover

attorney fees under the EAJA, a plaintiff must first show that she was the prevailing party in the

underlying civil action against the United States and that her application for attorney fees is

timely.  *See Kadelski v. Sullivan*, 30 F.3d 399, 401 (3d Cir. 1994) (interpreting § 2412(d)(1)); *see*

*also Ruiz v. Comm'r of Soc. Sec.*, 189 F. App'x 112, 113 (3d Cir. 2006) (not precedential) (citing

*Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).  If the plaintiff can show those prerequisites, she is

entitled to reasonable attorney fees and other costs unless the government can demonstrate that

"its litigation position [and] also the agency's position that made the lawsuit necessary,"

*Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir. 1985), was "substantially justified or that

special circumstances make an award unjust," § 2412(d)(1)(A).

       Substantial justification constitutes "'a middle ground between an automatic award of

fees to a prevailing party and an award made only when the government's position was

frivolous.'"  *Washington*, 756 F.2d at 961 (quoting *Dougherty v. Lehman*, 711 F.2d 700, 708 (3d

Cir. 1983)).  To meet its burden of proving substantial justification, the government must show:

"(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it

propounds; and (3) a reasonable connection between the facts alleged and the legal theory

advanced."  *Washington*, 756 F.2d at 961 (citing *Citizens Council of Del. County v. Brinegar*,

741 F.2d 584, 593 (3d Cir. 1984)); *see also Morgan*, 142 F.3d at 683-84 (quoting *Pierce*, 487

U.S. at 565 and *Hanover Potato Prod.'s, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993)).  The

government's burden "is a strong one and is not met merely because the government adduces

'some evidence' in support of its position."  *Washington*, 756 F.2d at 961 (citing *Tressler v.*

*Heckler*, 748 F.2d 146, 150 (3d Cir. 1984)).  Lastly, "[w]hen the government's legal position

clearly offends established precedent, . . . its position cannot be 'substantially justified.'"

*Washington*, 756 F.2d at 962.

### III.  Discussion

### A.  Whether the government's position was substantially justified

The government, while conceding that plaintiff is a "prevailing party" under the EAJA and that her application for attorney fees was timely filed, asserts that plaintiff is not entitled to attorney fees because its litigation position in defending the Commissioner's final decision was substantially justified.  (*See* Gov't Br. 2-5.)  In support of its assertion, the government notes that only one of plaintiff's five claims presented to this court on appeal was successful.  In addition, the government contends that the magistrate judge's report, which recommended that plaintiff's motion for summary judgment be denied and the government's cross-motion be granted, demonstrates that its litigation position had a reasonable basis in law and fact, i.e., it was substantially justified.  In light of established Third Circuit precedent, I conclude that the government's position was not substantially justified.

As stated above, "[w]hen the government's legal position clearly offends established precedent, . . . its position cannot be 'substantially justified.'"  *Washington*, 756 F.2d at 962. Here, the government's litigation position was contrary to established Third Circuit precedent holding that the "hypothetical question posed to a [VE] 'must reflect all of a claimant's impairments,'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)), and "*credibly established* limitations," *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (emphasis added).  The Third Circuit has

repeatedly stated that the VE's testimony with regard to "'a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question [posed to the VE] accurately portrays the claimant's individual physical and mental impairments.'" *Burns*, 312 F.3d at 123 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)); *see also Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005); *Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  Thus, the law with reference to the hypothetical question is well-established.

In the underlying litigation, plaintiff challenged the ALJ's determination–based heavily on the VE's testimony–that she remained able to perform substantial gainful activity.  More specifically, plaintiff claimed that the hypothetical question posed to the VE did not refer to several of her limitations–her difficulties with concentration, persistence and pace; her periodic isolation; and her depressed mood–and therefore the VE's opinion could not justify the ALJ's determination.  Although I concluded that the ALJ, having discredited plaintiff's claims of periodic isolation and depression based on her medical records and the evidence, had properly excluded those limitations from the hypothetical question posed to the VE, with regard to plaintiff's limitations on concentration, persistence and pace, I concluded otherwise.[6]

The ALJ incorrectly stated, without more, that there was no medical evidence of limitations on concentration, persistence and pace and, accordingly, excluded those limitations from the hypothetical question posed to the VE.  The ALJ posed the following hypothetical

---

[6]When evaluating a claim for disability payments, the Commissioner bears the burden of demonstrating that the claimant remains able to perform substantial gainful activity.  *See supra* note 4.  Thus, the hypothetical posed to the VE is critical.  The Commissioner cannot meet this burden at step five of the evaluation when the hypothetical does not reflect *all* of a claimant's impairments.  *Burns*, 312 F.3d at 123 (quoting *Podedworny*, 745 F.2d at 218).

question, which was unusually terse, to the VE:

> I'd like to pose a hypothetical to you.  I'd like to begin by assuming
> that we're talking about an individual with this–of this claimant's age,
> education, and past work history.  I'd like you to further assume the
> individual is capable of performing work that is low stress in nature
> providing no more than limited contact– [] –providing no more than
> limited contact with the public and co-workers.  With these
> limitations, could the individual perform any of the jobs that
> [plaintiff] has done in the past?

(R. 99-100.)  On review, I found that the record as a whole did in fact demonstrate that plaintiff

suffered from at least moderate limitations in maintaining concentration, persistence and pace.[7]

In addition, I concluded that the ALJ had failed to articulate a reason for disregarding the

evidence of those limitations, including plaintiff's testimony.[8]  *See Rutherford*, 399 F.3d at 554

(stating that while it is for the ALJ to decide which evidence to credit, he or she "cannot reject

evidence for no reason or for the wrong reason").  Further, the ALJ found plaintiff's testimony to

be generally credible.  *See Barry*, 2006 U.S. Dist. LEXIS 71918, at **28-29.  Therefore, because

the record demonstrated that plaintiff had credibly established her limitations on concentration,

persistence and pace, those functional limitations should have been included in the ALJ's

hypothetical question to the VE as required under well-established Third Circuit precedent.

*Ramirez*, 372 F.3d at 552 (holding that the hypothetical question posed to the VE was defective

---

[7]The record contained frequent references to plaintiff's limitations concerning her
concentration, persistence and pace.  References to these limitations were found in the notes of a
treating physician, the state agency's residual functional capacity assessment and reports, and
plaintiff's testimony, which the ALJ found to be generally credible.  *See Barry*, 2006 U.S. Dist.
LEXIS 71918, at **27-29.

[8]In remanding the case, I recognized that there may very well be a valid explanation for
the ALJ's omission of plaintiff's limitations from the hypothetical question posed to the VE;
however, no such explanation was provided.  *Barry*, 2006 U.S. Dist. LEXIS 71918, at *29.

because it failed to convey sufficiently the claimant's deficiencies in concentration, persistence or pace); *see also Allen*, 417 F.3d at 407; *Rutherford*, 399 F.3d at 554; *Burns*, 312 F.3d at 123 (quoting *Podedworny*, 745 F.2d at 218).

Further, the government's argument that its position was substantially justified because the magistrate judge recommended summary judgment be granted in favor of the government is unavailing. The report and recommendation's finding that the record did not show that plaintiff had credibly established her limitations was ultimately rejected by this court. In addition, a position is not substantially justified solely because the magistrate judge agrees with the ALJ. *See, e.g., Thompson v. Barnhart*, 2006 U.S. Dist. LEXIS 90759, at *11 (E.D. Pa. Dec. 14, 2006) (stating that "if the happenstance of a favorable ruling was tantamount to an achievement of 'substantial justification' then fees could only be awarded if the Commissioner struck out at every level," and "[t]here is no statutory or judicial suggestion that this is the standard for awarding fees"); *see also Taylor v. Heckler*, 835 F.2d 1037, 1044-45 (3d Cir. 1987) (concluding the government's position was not "substantially justified" even though the district court, agreeing with the government's position, had concluded otherwise).

Likewise, the fact that only one of plaintiff's five claims in the underlying litigation proved to be successful does not preclude the award of attorney fees. *See, e.g., Corona v. Barnhart*, 431 F. Supp. 2d 506, 517 n.14 (E.D. Pa. 2006) (noting that plaintiff's counsel "had an ethical *obligation* to raise all plausible theories on his client's behalf, and the EAJA surely does not require him to do so at the peril of losing a statutory entitlement to fees" (emphasis in original)). While the government successfully defended several of plaintiff's claims, the government's decision to oppose remand with regard to plaintiff's prevailing claim was not

9

substantially justified.  Thus, because the government has failed to satisfy its burden of

demonstrating substantial justification, I conclude that plaintiff is entitled to reasonable attorney

fees.

**B.  Whether the total fee amount requested by plaintiff's counsel is excessive or
unreasonable**

Plaintiff's counsel claims to have expended twenty-six hours and thirty minutes, which

includes the two hours he spent preparing the reply to the government's response to the instant

motion, in representing plaintiff and has submitted an itemized time sheet in support of his claim.

(*See* Pl.'s Mot. for Att'y Fees Ex. B.)  The government broadly argues that the number of hours

expended by plaintiff's counsel was excessive and unreasonable because social security cases are

the simplest type of litigation that rarely involve novel legal issues.  In addition, the government

argues that the $125.00 rate under the EAJA should be adjusted based on the increase in the cost

of living measured at the time plaintiff's counsel performed the work, which was in 2005, and

not based on the increase in 2006.  *See supra* note 5.

Under the EAJA, a party seeking attorney fees must demonstrate that the request is

reasonable and "should make a good-faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is

obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424,

434 (1983).  When the party opposing a motion for attorney fees objects to the number of hours

expended, that party "must, through affidavit or brief, provide notice with sufficient specificity to

the fee applicant the portion of the fee which must be defended." *White v. Barnhart*, 2006 U.S.

Dist. LEXIS 59387, at **14-15 (E.D. Pa. Aug. 18, 2006) (citing *Walton v. Massanari*, 177 F.

Supp. 2d 359, 361 (E.D. Pa. 2001)).  Further, in light of "the district court's superior

understanding of the litigation and the desirability of avoiding frequent appellate review of what

essentially are factual matters," *Hensley*, 461 U.S. at 437, the district court has discretion to

adjust the amount of the fee award.

      Regardless of whether the government's view of social security cases is accurate, the

government has not challenged the number of hours "with sufficient specificity" to provide

notice to plaintiff of the portion of the fee to be defended.  Its objection to the number of hours is,

therefore, rejected.  Moreover, I find that the amount of time–twenty-six hours and thirty

minutes–expended by plaintiff's counsel in litigating the instant action was very reasonable.  The

itemized time sheet provides, among other things, that plaintiff's counsel spent thirty minutes

filing the complaint, three hours researching legal issues and reviewing the transcripts, and

eleven hours preparing plaintiff's motion for summary judgment and memoranda of law in

support of plaintiff's motion for summary judgment and in opposition to the government's

motion for summary judgment.  In addition, plaintiff's counsel expended two hours preparing

and presenting oral argument before the magistrate judge, and four hours drafting and filing the

objections to the report and recommendation.  The amount of time expended on these activities

was not clearly unreasonable or excessive.  Further, the government has failed to specify which

of these itemized activities it believes were unreasonable.  Therefore, I find that the amount of

time expended by plaintiff's counsel was reasonable and not excessive.

      The government also asserts that the hourly rate requested by plaintiff's counsel is

unreasonable and excessive because it has been adjusted to compensate for the increase in the

cost of living as measured by the CPI for 2006.  The government–citing *Library of Congress v.*

*Shaw*, 478 U.S. 310 (1986) (holding that absent an explicit waiver of sovereign immunity, there can be no interest on judgments against the United States under Title VII of the Civil Rights Act)–contends that the $125.00 rate under the EAJA should be adjusted based on the increase in the cost of living as measured by the CPI for 2005, the year in which plaintiff's counsel rendered his services.  However, Third Circuit precedent holds otherwise.  In *Garcia v. Schweiker*, 829 F.2d 396 (3d Cir. 1987), the Third Circuit stated that "[b]y calculating the total fee amount by using the closest available [CPI] to the date on which the plaintiff became a prevailing party, . . . attorneys will receive, in today's dollars, the purchasing power to which they are entitled."  829 F.2d at 402 (citing *Natural Res. Def. Council, Inc. v. EPA*, 703 F.2d 700, 713 (3d Cir. 1983)). The government argues that *Garcia* was wrongly decided.  That, of course, is not for me to decide as I am bound by *Garcia*.  Here, plaintiff became a prevailing party in 2006.  *See Barry*, 2006 U.S. Dist. LEXIS 71918.  Further, the government's reliance on *Shaw* and its discussion on the waiver of sovereign immunity is misplaced as the EAJA explicitly provides that:  "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  § 2412(d)(2)(A)(ii).  Therefore, for purposes of the instant motion, I conclude that the $165.00 hourly rate requested by plaintiff's counsel for the services rendered is reasonable.

**C.  Whether plaintiff is entitled to attorney fees for services rendered by uncompensated law students**

Plaintiff seeks $1,950.00 in attorney fees for the services rendered–twenty-six hours–by uncompensated law students certified to practice in this district.  *See supra* note 1.  The

government contends that attorney fees may not be awarded for services rendered by certified law students because the EAJA does not explicitly state whether or not a court may do so. Without citation to any supporting authority, the government also claims that "the EAJA was not intended to subsidize the existence of . . . pro bono organizations" but rather "to encourage the private bar to accept [social security] cases." (Gov't's Resp. 11.)  The government believes that there is no shortage of private attorneys willing to represent individuals seeking judicial review of the denial of their disability claims; therefore, it asserts that denying an award of attorney fees for services rendered "by lowly paid or uncompensated law students" will not discourage lawyers from representing such individuals as plaintiff.  (*Id*. at 10.)  While noting that the Third Circuit has not directly addressed the issue, the government–relying on *Richlin Security Service Co. v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006)–asserts that the services rendered by certified law students should be deemed "expenses," i.e., awarded at cost to plaintiff's counsel, as opposed to "fees" under the EAJA.  *See* § 2412.  I disagree.

At the outset, I reject the government's assertion, which is wholly unsupported, that the EAJA was not intended to subsidize pro bono organizations but rather to encourage the private bar to accept social security cases.  Rather, the purpose of the EAJA was to quell the concerns of Congress that "the Government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation."  *Pierce*, 487 U.S. at 575 (Brennan, J., concurring in part and in the judgment). It is generally acknowledged that most disability claimants are indigent and have trouble obtaining both private or pro bono counsel.  If the government's argument were accepted, pro bono organizations representing individuals such as plaintiff would have more limited funding,

13

and fewer claimants whose disability claims have been denied would be able to obtain representation. Such a result would frustrate the purpose of the EAJA. Thus, I am persuaded that awarding attorney fees based on reasonable market rates for services rendered by uncompensated law students rather than the fee arrangement between a client and her attorney is the correct approach and would promote the general policy underlying the EAJA. *See DiGennaro v. Bowen*, 666 F. Supp. 426, 431 (E.D. Pa. 1987) (finding "no reason to deny a fee award to a legal service organization for the supervised hours reasonably expended by uncompensated law-students working in a clinical facility, despite their receipt of academic credit instead of payment for their services").

Second, I find unpersuasive the government's reliance on *Richlin* to support its argument that the EAJA does not allow for attorney fees to be awarded for the services rendered by a certified law student. *Richlin* held that under the EAJA, "*paralegal* services may only be reimbursed at the cost to the attorney and not at the market rate." 472 F.3d at 1371 (emphasis added). Unlike paralegals, certified law students must have a minimum of three semesters of legal training. In addition, certified law students, such as those involved with the instant action, are authorized to practice law in this district and provide clients with legal services (albeit under supervision of a licensed attorney). *See Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 522-24 (D.C. Cir. 1982) (refusing to "condone a concept of attorney's fees [under the Freedom of Information Act, 5 U.S.C. § 552] so narrow as to exclude the work of law students simply because they are not members of the bar"). Here, the certified law students provided services of a licensed attorney, not of a paralegal. The law students drafted the complaint, researched and prepared motions, and presented oral argument before the magistrate judge. Further, in light of

14

Third Circuit precedent, I find *Richlin* unpersuasive.  *See Citizens Council of Del. County v. Brinegar*, 741 F.2d 584, 596 (3d Cir. 1986) (approving district court's award of fees for services rendered by a paralegal); *see also Brinker v. Guiffrida*, 798 F.2d 661, 669 (3d Cir. 1986) (remanding to the district court for determination of reasonable attorney fees, including for services rendered by a law clerk).

Lastly, most courts that have addressed the current issue have awarded attorney fees under the EAJA for services rendered by law students.  *See Smith v. Heckler*, 739 F.2d 144, 148 (4th Cir. 1984) (awarding attorney fees under the EAJA to a third-year law student); *Williams v. Bowen*, 684 F. Supp. 1305, 1307-08 (E.D. Pa. 1988) (concluding that "[i]f courts do not award compensation for the work of law students . . . , lawyers will be discouraged from accepting cases" or "they may handle the entire cases themselves, thereby increasing the cost to the government"); *DiGennaro*, 666 F. Supp. at 431 (listing numerous cases where courts awarded attorney fees for services rendered by paid law students); *see also Brinker*, 798 F.2d at 669 (remanding to the district court for determination of reasonable attorney fees, including for services rendered by a law clerk); *Brinegar*, 741 F.2d at 596 (approving the district court's award of fees for services rendered by a paralegal).  These courts noted that the use of law students "is a cost-efficient component of the modern practice of law," *Hoopa Valley Tribe v. Watt*, 569 F. Supp. 943, 947 (D. Cal. 1983), and that "[d]enying compensation for a student law clerk under the EAJA has been considered counter productive," *DiGennaro*, 666 F. Supp. at 431 (citing *Berman v. Schweiker*, 531 F. Supp. 1149, 1154 (N.D. Ill. 1982)).  As one court stated, and I agree, "[l]aw students working pursuant to the Student Practice Rule of the Eastern District . . . provide a valuable service to their clients and the court."  *DiGennaro*, 666 F. Supp. at 432.

15

Because the services rendered by these certified law students are essentially the equivalent to those provided by licensed attorneys, they should be compensated under the EAJA as fees rather than expenses.  Such a result is in accordance with the underlying policy of the EAJA. Therefore, I conclude that an award of fees under the EAJA for services rendered by the certified law students in the instant action is proper.[9]

## IV.  Conclusion

For the aforementioned reasons, I conclude that plaintiff is entitled to attorney fees and costs of filing suit under the EAJA.  I further conclude that the services rendered to plaintiff by the certified law students are compensable as attorney fees under the EAJA.  Finally, I conclude that $6,572.50–the amount of attorney fees and costs requested–is not unreasonable nor excessive.

An appropriate order follows.

---

[9]The government has not objected to the reasonableness of the amount of time expended by the certified law students.  It initially argued that there was no evidence to support the hourly rate, but has registered no further objection after plaintiff submitted the 2006 fee schedule established by Community Legal Services showing an hourly rate range of $70.00 to $120.00 for law students.  (*See* Reply Ex. A.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| JULIE BARRY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1825 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## Order

AND NOW on this _____ day of July 2007, upon consideration of plaintiff's motion for attorney fees and costs, the government's response, and plaintiff's reply thereto, IT IS HEREBY ORDERED that plaintiff's motion for attorney fees (Docket No. 21) is GRANTED and attorney fees and costs are hereby awarded to plaintiff, made payable to the Penn Legal Assistance Office of the University of Pennsylvania Law School, and against the Commissioner of Social Security, in the total amount of $6,572.50.


___s/ William H. Yohn Jr._____

William H. Yohn Jr., Judge